[No. 23806-0-I.   Division One.   September 24, 1990.]

SEATTLE–FIRST NATIONAL BANK, *Petitioner,* v. WESTWOOD LUMBER, INC., *Respondent.*

*Richard A. Derham,* for petitioner.

*Ronald G. Brown,* for respondent.

SCHOLFIELD, J.—Seattle–First National Bank (Sea–First) appeals the trial court's order vacating Sea–First's voluntary nonsuit of its complaint against defendant Westwood Lumber, Inc. (Westwood). We reverse.

### FACTS

Westwood was in the wood products brokerage business in Aberdeen, Washington, serving as a middleman between suppliers of lumber and lumber products and the ultimate consumers. In 1982, it entered into a borrowing relationship with Sea–First, in which it pledged its accounts receivable to secure a line of credit which ultimately grew to $1 million.

In late 1984, Sea–First demanded that Westwood provide additional collateral to support its line of credit—collateral that Westwood was not required to provide under its agreement with Sea–First. When Westwood did not provide this collateral, Sea–First canceled the line of credit and demanded payment of all money advanced, even though

Sea–First knew that this termination could result in bankruptcy for Westwood.

In May 1985, Sea–First commenced suit against Westwood for payment of the balance remaining on the loan. Sea–First also sued Steven and Pamela Yonich, the sole shareholders of Westwood who had guaranteed the bank loan to Westwood. In finding of fact 33, the trial court found that Sea–First canceled the line of credit, though "[t]here was no basis upon which the Bank could reasonably and in good faith deem itself to be insecure so as to justify a total and immediate cessation of financing or a need for additional collateral."

In June 1985, Westwood answered, but asserted no counterclaims and sought no affirmative relief. Westwood had considered filing counterclaims and, in late 1986, indicated to the King County Superior Court that it intended to file its counterclaims no later than October 16, 1986. No such claims were filed.

In July 1985, Westwood filed for relief under chapter 11 of the federal Bankruptcy Code, 11 U.S.C. § 362. As of October 1986, the reorganization proceedings under chapter 11 were converted to liquidation proceedings under chapter 7.

Trial of the bank's claim against Westwood was stayed under the automatic stay provisions of 11 U.S.C. § 362, but the case went forward against the guarantors, the Yoniches, and was tried in July 1988. The trial court found that there was a debt due from Westwood to Sea–First in an amount of $382,000 plus interest, but held that the Yoniches were discharged from their guaranty because of Sea–First's failure to provide reasonable notice before termination of Westwood's financing. In conclusion of law 10, the court stated:

> The Bank's termination of financing caused the demise of [Westwood] Lumber without reasonable justification and with knowledge that its actions would lead to the company's failure and thereby did not act in good faith with respect to their duties toward [Westwood] Lumber and the Yoniches.

On December 13, 1988, Sea–First moved for a voluntary dismissal without prejudice of its action against Westwood pursuant to CR 41. Initially, the motion was heard ex parte and an order of dismissal without prejudice was entered by a superior court commissioner.

On December 23, 1988, Westwood moved to vacate that order, and on December 27, 1988, Sea–First brought a motion to confirm it. On February 17, 1989, the trial court vacated Sea–First's voluntary nonsuit, denied Sea–First's motion to confirm, and declared Sea–First's motion itself to be void ab initio. The court's ruling was based on its conclusion that Sea–First's actions in taking a voluntary nonsuit violated the automatic stay provisions of section 362 of the Bankruptcy Code.

On March 10, 1989, Sea–First moved for discretionary review of the order vacating Sea–First's voluntary nonsuit. Shortly thereafter, Sea–First brought a motion in the bankruptcy court for a declaratory ruling that obtaining a voluntary dismissal under CR 41 did not violate the automatic stay provisions of section 362. Sea–First also sought to have the court annul the stay.

On June 2, 1989, the United States Bankruptcy Court ruled that neither the motion for a voluntary nonsuit nor the action of the court commissioner in granting it violated the automatic stay (In re Westwood Lumber, Inc., No. 85–02976–X7 (Bankr. W.D. Wash. June 2, 1989)). The court further granted express relief from the stay so that these proceedings could continue.

With regard to Sea–First's March 10, 1989, motion for discretionary review in this court, the commissioner determined that the trial court "may have committed obvious or probable error" and granted the motion for discretionary review (commissioner's ruling, Aug. 3, 1989).

On May 4, 1989, Westwood filed a motion for leave to amend its 1985 answer to assert 10 separate counterclaims. That motion has not been argued or ruled upon.

By order filed March 8, 1990, the United States District Court reversed the order of the Bankruptcy Court and concluded that the order striking Sea–First's motion for a voluntary nonsuit properly applied the stay provision of 11 U.S.C. § 362. *In re Westwood Lumber, Inc.,* 113 Bankr. 684 (W.D. Wash. 1990).

On this appeal, we review the validity of the order of the King County Superior Court holding the motion for a voluntary dismissal under CR 41 violated the bankruptcy stay.

## Sea–First Entitled to a Voluntary Nonsuit Under CR 41(a)

The right to a voluntary nonsuit is initially a question of state law. Westwood argues that Sea–First was not entitled to obtain a dismissal under CR 41(a) because that rule refers to dismissals of actions and does not apply to dismissals of a single party. Westwood also claims that Sea–First, in order to be entitled to a voluntary nonsuit as a matter of right, had to make the motion prior to resting its case against any defendant. Westwood argues Sea–First waived that right when it tried its case against the Yoniches to completion.

CR 41 states in pertinent part as follows:

**(a) Voluntary Dismissal.**
(1) *Mandatory.* . . . any action shall be dismissed by the court:

. . . .

(B) By plaintiff before resting. Upon motion of the plaintiff at any time before plaintiff rests at the conclusion of his opening case.

When the motion is timely, the moving party has an absolute right to the nonsuit. *King Cy. Coun. v. King Cy. Personnel Bd.,* 43 Wn. App. 317, 318, 716 P.2d 322 (1986); 4 L. Orland, Wash. Prac. 239 (3d ed. 1983).

CR 41(a)(1) does not specifically refer to the dismissal of part of an action, and consequently there arises the issue of whether the rule can be applied to dismissal of an action against one, but not all, of the defendants. This issue has not been addressed in Washington case law, although cases

exist in which a voluntary dismissal was taken as to one party or as to part of the action. In such cases, the issue of whether such dismissal was proper never arose. *See Western Stud Welding, Inc. v. Omark Indus., Inc.,* 43 Wn. App. 293, 716 P.2d 959 (1986) (voluntary dismissal of one defendant); *Andersen v. Gold Seal Vineyards, Inc.,* 81 Wn.2d 863, 505 P.2d 790 (1973) (voluntary dismissal of third party complaint).

Fed. R. Civ. P. 41(a) is the federal counterpart to CR 41(a) and although the two rules are worded differently, both refer to the dismissal of "an action". The federal authorities are clearly divided as to whether a partial dismissal under Fed. R. Civ. P. 41(a) is proper. Annot., *Propriety of Dismissal Under Federal Civil Procedure Rule 41(a) of Action as Against Less Than All of Several Defendants,* 3 A.L.R. Fed. 569, 571 (1970). "However, a careful analysis of all the pertinent cases, especially the more recent ones . . . may generate the conclusion, shared by a leading commentator,[1] that the better view is the one allowing partial dismissal under Rule 41(a)." 3 A.L.R. Fed. at 571–72.

A broad reading of CR 41(a), allowing for dismissal of a single party, is particularly appropriate in the present case. Here, Westwood was the only defendant remaining at the time of the motion for nonsuit, the Yoniches having been dismissed on the merits. Dismissal as to Westwood in effect dismissed the entire action. Furthermore, the fact that Westwood was the only defendant remaining meant the dismissal had no effect on any other parties, a factor often considered by the courts when determining whether rule 41 should apply to dismissals of parties. *See* Annot., 3 A.L.R. Fed. 569 § 6, at 584–86 (1970).

Westwood argues that Sea–First lost its absolute right to a voluntary dismissal of Westwood because it did not bring its motion before resting at the conclusion of its opening case against the Yoniches. However, once the trustee

[1]*See* 5 J. Moore, *Federal Practice* § 41.06–1, at 41–86, 41–87 (1988).

decided not to be a part of the trial with the Yoniches or to present counterclaims, the cases became effectively two cases for trial purposes. Because the cases were treated separately for trial purposes, Sea–First should not be precluded from bringing a CR 41(a) motion as to Westwood, even though it would be too late to do so as to the Yoniches.

We hold that under CR 41(a), Sea–First was entitled to take a voluntary nonsuit as to Westwood.

## AUTOMATIC STAY PROVISION OF 11 U.S.C. § 362(a) DID NOT PRECLUDE A MOTION FOR VOLUNTARY DISMISSAL

Having decided that the taking of a voluntary nonsuit by Sea–First was proper, the issue now becomes whether the motion for nonsuit violated the automatic stay.

Section 362 of 11 U.S.C. provides that a petition filed under this title

operates as a stay, applicable to all entities, of—
   (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
   . . . .
   (3) any act to obtain possession of property of the estate or of property from the estate . . ..

Westwood first argues that Sea–First violated the stay in that the filing of the motion for a nonsuit amounted to a continuation of the state court proceeding. In support of its position, Westwood cites *Pope v. Manville Forest Prods. Corp.*, 778 F.2d 238 (5th Cir. 1985).

In *Pope,* the court said at page 239:

We recognize that the stay, by its statutory words, operates against "the commencement or continuation" of judicial proceedings. No specific reference is made to "dismissal" of judicial proceedings. Nevertheless, it seems to us that ordinarily the stay must be construed to apply to dismissal as well. First, if either of the parties takes any step to obtain dismissal, such as motion to dismiss or motion for summary judgment, there is clearly a continuation of the judicial proceeding. Second, in the

more technical sense, just the entry of an order of dismissal, even if entered sua sponte, constitutes a judicial act toward the disposition of the case and hence may be construed as a "continuation" of a judicial proceeding. Third, dismissal of a case places the party dismissed in the position of being stayed "to continue the judicial proceeding," thus effectively blocking his right to appeal.

We find the reasoning of the *Pope* opinion unpersuasive, particularly when applied to the facts of this case. The emphasis in *Pope* is upon "continuation". The statute, however, also includes the word "against". Read as a whole, the commonsense meaning of the statute is that those actions are stayed which would amount to a continuation against the debtor.

Taking a voluntary nonsuit is the precise opposite of the continuation of an action against the debtor. It amounts to a discontinuance or termination of the action, which is to the debtor's advantage. If we agreed, arguendo, that the filing of a motion for a voluntary nonsuit was a continuation of the action, we do not see how it could be construed as a continuation *against* the debtor. It is so clearly to the debtor's benefit. Statutes must be read as a whole, and each part given meaning where possible. *Kifer v. Liberty Mut. Ins. Co.,* 777 F.2d 1325 (8th Cir. 1985); *Tommy P. v. Board of Cy. Comm'rs,* 97 Wn.2d 385, 391, 645 P.2d 697 (1982). We find nothing in the *Pope* opinion that explains how the taking of a nonsuit can be classified as a proceeding *against* the debtor.

Our interpretation of the stay statute is consistent with the purposes of the stay, as variously described in court decisions and treatises.

> Thus, the Bankruptcy Code of 1978 provides for an automatic stay of virtually all activities adversely affecting the debtor or the debtor's property.

9 Am. Jur. 2d *Bankruptcy* § 454, at 724 (1980).

> The automatic stay at the commencement of the case is in recognition of the fact that once the case has been commenced, all creditors' rights against the debtor become rights against the estate; creditors must seek satisfaction of their claims from the estate. Moreover, the automatic stay is the first part of

bankruptcy relief for the debtor, since it gives him a respite from the forces that led him to bankruptcy; the automatic stay at the commencement of the case takes the pressure off the debtor. Thus, it has been said under the 1978 Code that the automatic stay is intended to insure an orderly liquidation or rehabilitation.

(Footnotes omitted.) 9 Am. Jur. 2d *Bankruptcy* § 456, at 731 (1980).

*In re Bennett,* 29 Bankr. 380 (Bankr. W.D. Mich. 1981), in commenting on the purpose of 11 U.S.C. § 362(a), states at page 381:

The legislative history of this section [11 U.S.C. § 362(a)] indicates that the stay provisions are a mechanism to protect both debtor and creditor. The debtor is relieved from further collection efforts, harassment, and foreclosure actions, and is permitted to work out his repayment. Creditors are protected by insuring that liquidation proceedings are orderly and all creditors are treated equally. Creditors who act first to obtain payment cannot prosper to the detriment of other creditors.

*In re Ahlers,* 794 F.2d 388 (8th Cir. 1986) states at pages 393–94:

The filing of a Chapter 11 bankruptcy petition results in an automatic stay of all acts by creditors to enforce their liens against the debtor's property. 11 U.S.C. § 362(a). The purpose is twofold: first, to give the debtor a "breathing spell" from his creditors; and second, to prevent one creditor from rushing to enforce its lien to the detriment of the other creditors.

(Footnotes omitted.) *See also Woolworth v. Micol Land Co.,* 55 Wn. App. 671, 679, 780 P.2d 264 (1989); H.R. Rep. No. 595, 95th Cong., 1st Sess. 340 (1977).

It is apparent from the foregoing authorities that a stay was intended to operate against a continuation or commencement of proceedings against a debtor which would give one creditor an advantage over other creditors or would amount to a continuation of collection or enforcement efforts against the debtor.

In *Dennis v. A.H. Robins Co.,* 860 F.2d 871 (8th Cir. 1988), the District Court dismissed the action of plaintiff Dennis while the defendant A.H. Robins Co. was in bankruptcy. Dennis contended that the dismissal was invalid because the court lacked the power to so act while the

automatic stay was in effect. The court rejected her argument, saying:

> We are not persuaded by this argument. . . . The bankruptcy court does not have the power to preclude another court from dismissing a case on its docket or to affect the handling of a case in a manner not inconsistent with the purpose of the automatic stay.

*Dennis v. A.H. Robins Co., supra* at 872.

█ We are satisfied that taking of a voluntary nonsuit of a pending action against a debtor in bankruptcy does not violate the automatic stay because it does not violate any of the purposes of the automatic stay. It cannot be construed as a continuation of collection efforts against the debtor or harassment of the debtor. Nor could it have the effect of giving the creditor taking the voluntary nonsuit an advantage over any other creditor.

### Loss of Counterclaims

Westwood argues the dismissal violated the stay in that it altered the status quo because the trustee would lose valuable counterclaims which would be time barred by the dismissal. Westwood's theory is that if the original action against it by Sea–First is not dismissed, then if its motion to file counterclaims is granted, those counterclaims would relate back to the date the complaint was filed and would not be time barred. Its motion to file counterclaims was filed May 4, 1989.

█ The issue of whether the order of dismissal violated the stay must be decided as of the date it was entered, and that was in December 1988. There were no counterclaims in existence at that time nor any motion pending to file counterclaims. A motion to file counterclaims made May 4, 1989, cannot affect Sea–First's rights to dismiss in December 1988. Thus, it would appear that the entire argument based on the possible existence of counterclaims is irrelevant to the issue here. Furthermore, the record before this court contains no information relative to the nature of the alleged counterclaims. It is clear, however, that if any possible counterclaims are time barred, it is because they were not

354

asserted before the statutory period for bringing those claims expired. Thus, Sea–First's nonsuit, if ultimately granted, would not be the cause of the counterclaims being time barred.

Sea–First was entitled to a voluntary dismissal, the granting of which did not violate the automatic stay.

This case is reversed and remanded to the Superior Court with instructions to reinstate the commissioner's order granting the voluntary nonsuit.

PEKELIS and BAKER, JJ., concur.

Review denied at 116 Wn.2d 1003 (1991).