BOLIN, Justice.
On May 4, 2005, Water’s Edge, LLC (“Water’s Edge”), was formed for the purpose of purchasing and developing real estate. When Water’s Edge was formed, Scott Raley was the sole member and manager. In June 2005, Raley resigned as a member of Water’s Edge, and new members were added, including Dewey Miller (10%); Gerald Lawhorn (10%); Terry Mullins (5%); Irma E. Cook (5%); Stanley Minkinow (10%); Medino, LLC (10%); Robert G. Mayes, Sr. (10%); Parks, LLC (10%); Gulf Shores Marina, LLC (10%); Fort Morgan Investors II, LLC (10%); and Capp ‘N Monk. Investments, LLC (10%). Raley continued to serve as one of the managers of Water’s Edge. All the newly admitted individual members, along with the managers of the limited liability companies that were members of Water’s Edge, signed an amendment to Water’s Edge’s operating agreement, reflecting these changes. .
On June 2, 2005, Water’s Edge purchased lots 62-69 of “Re-Subdivision A” located in Baldwin County and commonly referred to as Gulf Shores Yacht Club and Marina (hereinafter “the property”). Fairfield Financial Services, Inc. (“Fair-field”), loaned Water’s Edge $12.8 million of-the $13 million needed to purchase the property. In October 2006, Water’s Edge redeemed the membership interests held by Mayes and Capp ‘N Monk Investments, LLC, and those interests were sold to new members, McRhee Hugghins and Paul Spina, respectively. In March 2007, Water’s Edge redeemed the membership interest of Medino, LLC, and simultaneously sold the interest to Donnie Tucker.
*317 In 2006, Fairfield notified Water’s Edge that it would not renew Water’s Edge’s loan. ■ By this time, there were- four managers of Water’s Edge: Raley, Billy Parks, Wayne Burnett, and Jeffrey M. Boyd. The members of Water’s Edge authorized the managers to seek new financing. In December 2006, Vision Bank agreed to lpan Water’s Edge $14.6 million. Vision. Bank later merged with SE Property Holdings, LLC (hereinafter referred to as “SEPH”). The debt was structured as two loans—one for $10 million and one for $4.5 million. SEPH entered into a participation loan with Park National Bank, which funded 100% of the $14.5 million in loans to Water’s Edge. SEPH serviced the loans and evaluated construction draws on the loans, among other things.
Certain of the members of Water’s Edge signed agreements guaranteeing all of Water’s Edge’s debt to SEPH. For purposes of these appeals, those members or those having membership interests in Water’s Edge by virtue of their ownership of corporate members and who agreed to guarantee the debt included Jerry Gaddy, Earl George, Kent Rector, Richard Harrell, David Harrell, Stewart Harrell, Terry Mullins, Gerald Lawhorn, Dewey Miller, and David Thomas (hereinafter collectively referred to as “the guarantors”).[1] Each of the guarantors signed two agreements. One of the agreements was a “continuing limited guaranty agreement” related to the $4,5 million loan. The agreement signed by the guarantor provided that the guarantor was “jointly and severally, unconditionally and absolutely” guaranteeing certain sums under the, loan. The agreement further provided that, notwithstanding anything to the contrary, the guarantor was limited to a specific amount, which varied with each guarantor. The second agreement related to the $10 million loan. That agreement was a “continuing unlimited guaranty agreement” and provided that the guarantor was “jointly and severally, unconditionally and absolutely” guaranteeing the sums under the loan. The second agreement was not limited in amount.
In 2008, the managers of Water’s Edge, with the approval of the members, asked to borrow an additional $3.5 million from SEPH. SEPH agreed to loan Water’s Edge $2,5 million. In May 2008, the guarantors each signed an acknowledgment and ratification and consented to amend the unlimited guaranty relating to the $10 million loan to include a guaranty of the $2.5 million loan. At this point, Water’s Edge had $17 million in loans from SEPH.
In October 2008, SEPH notified Water’s Edge that the loans were in default. In March 2009, SEPH renewed its participation loan with Park National Bank regarding the loans to Water’s Edge. In June 2010, SEPH sent the guarantors a notice of default and a demand for payment.
On October 11, 2010, SEPH sued Water’s Edge and 28 individuals, including the guarantors, based on the -promissory notes and guaranty agreements. Individu *318 al guarantors Gaddy, George, and the Har-rells filed counterclaims against SEPH. They also filed third-party complaints against certain employees of SEPH: Daniel Sizemore, chief executive officer; Darrell Melton, business-development officer; Andrew Braswell, executive vice president; and Tracy Rippy, credit analyst. They alleged that SEPH and its officers were part of a scheme with developer Scott Raley to solicit investments in the property using false information and sought damages and rescission of the guaranty agreements.
Individual guarantor Kent Rector filed a counterclaim against SEPH. Rector also filed a third-party complaint against certain fictitiously defendants. Rector later amended his third-party complaint to name Melton as a third-party defendant. Miller and Mullins filed a counterclaim against SEPH. Miller and Mullins also filed third-party complaints against certain fictitiously named defendants and later amended their complaints to include only Melton. Thomas filed a counterclaim against SEPH but filed no third-party claims. Lawhorn filed a counterclaim and a third-party complaint against fictitiously named defendants.
Gaddy and George named Park and bank officers Sizemore, Braswell, Melton, and Rippy as third-party defendants. They alleged the officers had arranged for them to sign the guaranties in return for fraudulently overvalued interests in Water’s Edge.
The trial began on November 3, 2014. At the close of SEPH’s case, the defendants filed a motion for a judgment as a matter of law (“JML”) pursuant to Rule 50, Ala. R. Civ. P. SEPH also filed a motion for a JML. At the close of all the evidence, the guarantors and the other defendants renewed them motions, as did SEPH.
The trial court did not submit the case to the jury but, instead, discharged the jury on November 17, 2014. On November 25, 2014, the trial court entered an order granting SEPH’s motion for a JML. The trial court found the guarantors and the other defendants jointly and severally liable in the amount of $10,879,588.68 based on the continuing unlimited guaranty agreements. The trial court found each of them individually liable for differing amounts totaling $5,632,746.35 based on the continuing limited guaranty agreements they had signed. The trial court’s order did not account for settlements entered into during the trial, nor did the order reference three defendants who had filed petitions in bankruptcy during the course of the litigation.
On December 17, 2014, the trial court entered an order taking into account the settlements and finding the guarantors and the other defendants jointly and severally liable for $9,084,076.14 based on the continuing unlimited guaranty agreements. The trial court found each of them individually liable for differing amounts totaling $2,297,431 based on the continuing limited guaranty agreements they had signed. The December 17, 2014, order did not expressly refer to the three defendants who had filed petitions in bankruptcy but stated that “[a]ll other claims not herein or otherwise disposed of are dismissed with prejudice.”
The guarantors timely filed a motion to alter, amend, or vacate the judgment, which the trial court denied. The guarantors then appealed.

Discussion

The guarantors argue that the trial court’s order entered on December 17, 2014, was not final because five defendants in the litigation, who are not parties to these appeals, filed petitions in bankrupt *319 cy. Three of those defendant's filed their petitions before the December 17, 2014, order was entered: Wayne Burnett, Patricia Oh, and Richard Long. Two of those defendants filed their petitions after the order was entered: Jeffrey Boyd and David Barnard (those five defendants are hereinafter collectively referred to as “the bankrupt defendants”). The trial court’s December 17, 2014, order dismissed with prejudice all pending claims. The order provided that Boyd and Barnard, along with the guarantors and six other defendants, were jointly and severally liable for $9,084,076.14 plus interest based on their continuing unlimited guaranty agreements. The order further provided that Boyd was individually liable for $81,000 and Barnard was individually liable for $10,800 based on their continuing limited guaranty agreements.
The guarantors argue that because automatic bankruptcy stays were entered as to the bankrupt defendants (and SEPH did not seek permission from the bankruptcy court to lift the stays except as to one of the bankrupt defendants), the December 17, 2014, order cannot be a final judgment because any action taken by the trial court while the stay was in effect was void. They argue that only after the automatic bankruptcy stay is lifted is the circuit court empowered to take action to dismiss a defendant who has filed a petition in bankruptcy. This automatic stay, however, does not extend to solvent codefendants like the guarantors except in special circumstances not applicable here. Bradberry v. Carrier Corp., 86 So.3d 973 (Ala.2011)(holding that, in wrongful-death action brought against multiple defendants by the estates of decedents who allegedly died as the result of exposure to asbestos in the workplace, the trial court did not violate the automatic-stay provision of the Bankruptcy Code by letting the case proceed with regard to the solvent defendants’ summary-judgment motions without first entering an order severing and staying the action as to, or dismissing from the case, a defendant who had filed a petition in bankruptcy). The question is whether the automatic stay precluded the trial court from dismissing the claims against the bankrupt defendants; if so, the trial court’s judgment is not final, and these appeals should be dismissed.
The United States Bankruptcy Code provides for an automatic injunction as set out in 11 U.S.C. § 362; it stays actions by a creditor against the debtor. Section 362 prohibits the “commencement or continuation ... of a judicial ... action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.” 11 U.S.C. § 362(a)(1). The automatic stay is one of the fundamental protections provided debtors by the bankruptcy laws. It gives the debtor a breathing spell from creditors; it stops all collection efforts, all harassment, and all foreclosure actions; it permits the debtor to attempt a repayment or reorganization plan or simply to be relieved of the financial pressures that drove him or her into bankruptcy; and it provides creditor protection. Without it, certain creditors would be able to pursue their own remedies against the debtor’s property. Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors. “Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally. A race of diligence by creditors for the debtor’s assets prevents that.” In re Ampal-American Israel Corp., 502 B.R. 361, 369-70 (Bankr.S.D.N.Y.2013). “Violations of the automatic stay are void for all purposes. *320 Their ineffectiveness is permanent, not temporary.” 40235 Washington St. Corp. v. Lusardi, 177 F.Supp.2d 1090, 1104 (S,D.Cal.2001). “Actions taken in violation of the automatic stay are void and without effect.” Borg-Warner Acceptance Corp. v. Hall, 685 F.2d 1306, 1308 (11th Cir.1982); see also LaBarge v. Vierkant (In re Vierkant), 240 B.R. 317, 325 (BAP 8th Cir.1999)(holding that “an action taken in violation of the automatic stay is void ab initio”); Village Nurseries v. Gould (In re Baldwin Builders), 232 B.R. 406, 410 (BAP 9th Cir.1999); Soares v. Brockton Credit Union (In re Soares), 107 F.3d 969, 976 (1st Cir.1997); Franklin Sav. Ass’n v. Office of Thrift Supervision, 31 F.3d 1020, 1022 (10th Cir.1994); In re Siciliano, 13 F.3d 748, 751 (3d Cir.1994); and FDIC v. Hirsch (In re Colonial Realty Co.), 980 F.2d 125, 137 (2d Cir.1992).
The stay “continues until the earliest of—(A) the time the [bankruptcy] case is closed; (B) the time the [bankruptcy] case is dismissed; or (C) if the case is a case under Chapter 7 of this title concerning an individual ..., the time a discharge is granted or denied.” 11 U.S.C. § 362(c)(2). After entry of the discharge, if one is granted, a discharge injunction replaces the automatic stay with a permanent injunction against enforcement of all discharged debts. 11 U.S.C. §§ 362, 524(a)(2); In re Goodfellow, 298 B.R. 358 (Bankr.N.D.Iowa 2003).
In McKiever v. King & Hatch, Inc., 366 So.2d 264 (Ala.1978), a general contractor sought to recover $125,000 from seven defendants, makers of a promissory note executed to cover construction costs on an apartment complex. Defendants Daniel McKiever and Elizabeth McKiever filed a cross-claim and a third-party claim based upon an indemnity agreement. The contractor moved for a summary judgment. The trial court severed the McKievers’ cross-claim and third-party claim from the action on the note, and entered a summary judgment against five of the seven defendants, including the McKievers. The trial court denied the contractor’s summary-judgment motion as to the two remaining defendants—the Guests—because those two defendants had petitioned for bankruptcy. The McKievers appealed, and this Court dismissed the appeal as being from a nonfinal judgment. The rights and liabilities of the Guests, who were averred to have filed for bankruptcy protection, were not finally adjudicated by the trial court when it denied the summary-judgment motion as to them. This Court stated:
“The filing of a petition for bankruptcy by a defendant does not terminate an action in state court against him. A pending suit founded upon a claim for which discharge would be a release is automatically stayed until adjudication or dismissal of the bankruptcy petition. 11 U.S.C. § 29(a) (1976); Bankruptcy Rule 401(a), (b). The stay may be annulled as to claims not scheduled in time for proof and allowance. Bankruptcy Rule 401(c). The stay may be vacated by the bankruptcy court upon application by the creditor. Bankruptcy Rule 401(d). Moreover, the petition may be dismissed and the stay vacated if the petitioner has obtained a discharge in bankruptcy within the past six years. See generally 1A Collier on Bankruptcy ¶¶ 11.01-.08. Johnson Dry Goods Co. v. Drake, 219 Ala. 140, 121 So. 402 (1929). See Piel v. Harvard Interiors Manufacturing Co., 490 F.2d 1272 (8th Cir.1974).
“There is no indication of the progress or status of the bankruptcy petition. The stay may have been, or may soon be, dissolved or vacated and the contractor will be able to pursue his claim against the Guests. Since there has been no final disposition of the rights and liabilities of two of the defendants, *321 the order granting summary judgment as to the other five is not a final judgment and, because there has been no entry and determination under Rule 54(b), [Ala. R. Civ. P.,] it is not appeal-able.”
McKiever, 366 So.2d at 265.

Bankrupt Defendants Wayne Burnett, Patricia Oil, and Richard Long

SEPH sued the defendants on October 11; 2010. Burnett did not file an answer to the complaint. Oh filed an answer and asserted counterclaims against SEPH and third-party claims against certain employees of SEPH. Burnett filed for bankruptcy and was discharged from bankruptcy on August 17, 2011, and his bankruptcy case was closed on August 31, 2011. Oh filed for bankruptcy and was discharged on October 12, 2011, and her bankruptcy case was closed on June 14, 2012. The trial court entered its order on December 17, 2014, dismissing all pending claims, which would include SEPH’s claims against Bur-nétt and Oh, and dismissing Oh’s counterclaims against SEPH and third-party claims against SEPH’s employees.
The automatic bankruptcy stay imposed. when Burnett and Oh filed their petitions in bankruptcy expired when Burnett and Oh were discharged. Section 524(a)(2) of the Bankruptcy Code provides that a discharge operates as an injunction against the commencement or continuation of an action, the employment of process, or an act to collect, recover, or offset any such debt as a personal liability of the debtor. In other words, a discharge injunction enjoins a creditor or claimant from initiating or continuing a cause of action but does not divest state courts of jurisdiction over an enjoined action.
“Indeed, if discharge deprived a state court of jurisdiction, then there would be no need for the permanent injunction that accompanies the discharge. Furthermore, a debtor: confronted by a creditor seeking to collect on - a debt discharged in bankruptcy may' assert discharge as an affirmative defense in state court. In re Kewanee Boiler Corp., 270 B.R. 912, 918 (Bankr.N.D.Ill. 2002).”
Warriner v. DC Marshall Jeep, 962 N.E.2d 1263, 1268 (Ind.Ct.App.2012). Accordingly, we hold that the trial court’s dismissal of the claims against Oh and Burnett and of Oh’s counterclaims' and third-party claims did not violate the bankruptcy stay.
Long did not file an answer to .the complaint. The court clerk entered a default judgment against Long on December 27, 2010. He filed for bankruptcy in July 2014. SEPH filed a motion notifying the court that Long had filed for bankruptcy. The automatic bankruptcy stay was in effect at the time the trial court entered ; its order dismissing the claims against Long on December 17, 2014. By its terms, the automatic-stay' provision prohibits ’ the “commencement or continuation”' of a judicial proceeding; 11 U.S.C. § 362(a)(1). > ■
SEPH argues that it voluntarily dismissed its claims against Long because, it argues, it drafted the December 17, 2014, order the trial court adopted. SEPH further argues that a voluntary dismissal does not violate the automatic bankruptcy stay.
There are cases holding that a voluntary dismissal of a defendant does not ¡violate the automatic bankruptcy stay. See, e.g., Slay v. Living Ctrs., Inc., 249 B.R. 807, 807 (S.D.Ala.2000)(noting that “voluntary dismissals assist rather than interfere with the goals of’ bankruptcy and do “not violate the automatic stay”); Seattle-First Nat’l Bank v. Westwood Lumber, Inc., 59 Wash.App. 344, 351, 796 P.2d 790, 794 (1990) (“[A] voluntary nonsuit is the pre *322 cise opposite of the continuation of an action against the debtor. It amounts to a discontinuance or termination of the action, which is to the debtor’s advantage.”). However, we do not agree with SEPH that it voluntarily dismissed its claims against Long by providing the court with a proposed order the trial court later adopted as its own. “ ‘[WJhen a trial court adopts verbatim a party’s proposed order, the findings of fact and conclusions of law are those of the trial court and they may be reversed only if they are clearly erroneous.’” Ex parte Ingram, 51 So.3d 1119, 1122-23 (Ala.2010)(quoting McGahee v. State, 885 So.2d 191, 229-30 (Ala.Crim. App.2003)); see also United States v. El Paso Natural Gas Co., 376 U.S. 651, 656, 84 S.Ct. 1044, 12 L.Ed.2d 12 (1964)(ex-pressing disapproval of the “mechanical” adoption of findings of fact prepared by a party but stating that such findings are formally those of the trial judge and “are not to be rejected out>-of-hand”).
The question is whether the trial court’s dismissal of SEPH’s claims against Long violated the bankruptcy stay. We hold that it does. The automatic stay prohibits the commencement or continuation of a judicial action or proceeding against the debtor or to recover a claim against the debtor that arose before the commencement of the bankruptcy case. Even though the trial court’s order dismissing SEPH’s claims against Long is in Long’s favor, it is nonetheless a “continuation” of the judicial proceeding. See LaBarge, supra (holding that a default judgment entered in violation of the stay was void ab initio and had no collateral-estoppel effect); Dean v. Trans World Airlines, Inc., 72 F.3d 754 (9th Cir.1995)(holding that a post-bankruptcy filing dismissal in favor of the bankrupt defendant violates the automatic stay where the decision to dismiss requires the court to consider other issues presented related to the underlying case); Ellis v. Consolidated Diesel Elec. Corp., 894 F.2d 371, 373 (10th Cir.1990)(holding that summary judgment in debtor’s favor did not cure bankruptcy-stay violation because “the operation of the stay should not depend upon whether the district court finds for or against the debtor”); and Pope v. Manville Forest Prods. Corp., 778 F.2d 238, 239 (5th Cir.1985)(holding that the trial court’s sua sponte dismissal in favor of defendant employer who had filed for bankruptcy violated the automatic stay for the following reasons: “First, if either of the parties takes any step to obtain dismissal, such as motion to dismiss or motion for summary judgment, there is clearly a continuation of the judicial proceeding. Second, in the more technical sense, just the entry of an order of dismissal, even if entered sua sponte, constitutes a judicial act toward the disposition of the case and hence may be construed as a ‘continuation’ of a judicial proceeding. Third, dismissal of a case places the party dismissed in the position of being stayed ‘to continue the judicial proceeding,’ thus effectively blocking his right to appeal. Thus, absent the bankruptcy court’s lift of the stay, or perhaps a stipulation of dismissal, a case such as the one before us must, as a general rule, simply languish on the court’s docket until final disposition of the bankruptcy proceeding.”).
Additionally, the trial court did not enter a Rule 54(b), Ala. R. Civ. P., order making its order final as to the guarantors. In Bradberry v. Carrier Corp., supra, the personal representatives of two estates appealed from a summary judgment in favor of Carrier Corporation and other defendants on their wrongful-death claims based on the decedents’ exposure to asbestos in their work environment. The defendants moved for a summary judgment. While the litigation was pending, one of the defendants, Leslie Controls, filed a petition *323 in bankruptcy. The trial court ordered the parties to provide it with the names of the defendants that had filed for bankruptcy so it could enter an order severing, staying the action as to, or dismissing those defendants. The plaintiffs objected on the grounds (1) that their action against the defendants—whether the defendants were in bankruptcy or not—was a single cause of action that could not be split into multiple actions; (2) that severing and staying claims against certain defendants did not eliminate the application of the doctrine of res judicata or collateral estop-pel against both the plaintiffs and the severed defendants; (3) that the trial court should not sever from an action a defendant whose ultimate status has not yet been determined by the bankruptcy court; (4) that a sua sponte dismissal of a defendant simply because of the filing of a petition for bankruptcy was not appropriate because the plaintiffs had not agreed to dismiss their claims against that defendant; and (5) that this Court established precedent in its summary affirmance of another case. At the hearing on the summary-judgment motions, the plaintiffs argued that the case was stayed in its entirety based on the bankruptcy petition filed by Leslie Controls. The plaintiffs contended that the trial court could not move the case forward insofar as it pertained to the solvent defendants without violating the automatic stay unless it first severed the claims against or dismissed Leslie Controls from the action as it had suggested it would do. However, the plaintiffs also argued that even severing or dismissing Leslie Controls from the case was inappropriate because their wrongful-death action was an indivisible claim as a matter of law and a severance of the claims would result in the prosecution of two separate actions. The plaintiffs further argued that a dismissal of Leslie Controls was inappropriate because, they said, it was the plaintiffs’ choice on how to proceed against a bankrupt defendant and that any dismissal before the bankruptcy court’s approval of Leslie Controls’ petition and plan for reorganization was premature. The plaintiffs expressly stated that they were not responding to the substantive merits of the defendants’ summary-judgment motions because to do so would violate the automatic stay. The trial court entered summary judgments in favor of Carrier and the solvent defendants and made those summary judgments final pursuant to Rule 54(b).
On appeal, we noted that the automatic bankruptcy stay does not act to stay proceedings against the bankrupt defendant’s solvent codefendants. We recognized that, although the plaintiffs’ argument that the trial court must first sever the claims and stay the action against the bankrupt defendant in order to avoid violating the automatic stay is in keeping with the spirit of § 362, this Court was not persuaded that the trial court was required to enter an order formally severing the claims and staying the action because the stay was automatically triggered as to the bankrupt defendant at the time the defendant filed its bankruptcy petition. This Court stated that it would seem that the trial court could simply proceed to a summary-judgment hearing as to the solvent codefen-dants while honoring the § 362 automatic stay against the bankrupt defendant. Although the trial court had alluded that it would sever the claims and stay the action as to Leslie Controls or dismiss Leslie Controls from the action, the trial court was not required to do so in order for the case to proceed against the solvent defendants. The Rule 54(b) order made the judgments final as against Carrier and the solvent defendants for the purpose of appeal.
*324 In Snow v. Baldwin, 491 So.2d 900 (Ala. 1986), the plaintiffs sued Lamar Snow and Larry Reasonover following the sale of a business. While the litigation was pending, Reasonover filed a petition in bankruptcy. The plaintiffs informed the trial cpurt that they wished to sever their claims against Reasonover from the action and. to proceed solely against Snow. “Although the trial court never entered a formal order of severance against Reason-over, the case was tried before a jury against Snow alone.... ” 491 So.2d at 902 (footnote omitted). We noted that the automatic-stay provision of the Bankruptcy Code does, not affect a party’s right to proceed against solvent codefendants. “We consider the disposition of defendant Snow to have been a disposition, of all defendants for purposes of finality of appeal. See Rule 54(b), Ala. R. Civ. P.” 491 So.2d at 902 n. 2.
In Garrigan v. Hinton Beef & Provision Co., 425 So.2d 1091 (Ala.1983), Hinton Beef sued Tommy Garrigan, Diane Garrigan, and Jasper Steaks, Inc., seeking to recover on a promissory note. Hinton Beef moved for a summary judgment, which motion was unopposed by the defendants. The trial court entered a summary judgment in favor of Hinton Beef. Subsequently, the defendants moved to set aside the summary judgment. At a hearing, it was brought to the trial court’s and Hinton Beef’s attention that Jasper Steaks had filed a petition in bankruptcy. Hinton Beef conceded that, because the Bankruptcy Code restrains all creditors from the enforcement of an obligation while a bankruptcy case is pending and voids any judgments entered during the period, Jasper Steaks could not be reached by the summary judgment. Notwithstanding this re-suit, Hinton Beef contended that the judgment against the defendants was in no way affected. The trial court denied the motion to set aside the judgment, and the defendants appealed. The defendants argued that the summary-judgment order was ineffective to adjudicate the liability of Jasper Steaks and, therefore, that the summary judgment was not a final order and was subject to revision and reconsideration under Rule 54(b). The Court disagreed with that contention and concluded that Rule 54(b) is inapplicable under the stipulated facts, because there was in fact a final judgment entered as to all three defendants, even though that judgment was unenforceable as to Jasper Steaks.[2]
In the present case, the trial court’s “final” order purported to adjudicate the claims of Long, the bankrupt defendant, in violation of the bankruptcy stay. The trial court did not enter a Rule 54(b) order as to the solvent guarantors so as to invoke this Court’s jurisdiction.

Bankrupt Defendants Jeffrey Boyd and David Barnard

Both Jeffrey Boyd and David Barnard filed for bankruptcy protection after the trial court entered its order on December 17, 2014. On January 16, 2015, both Boyd and Barnard filed a postjudgment motion to alter, amend, or vacate the judgment. On February 11, 2015, Boyd filed a petition in bankruptcy. On February 25, 2015, the trial court denied the postjudgment motions. On February 27, 2015, Barnard filed a petition in bankruptcy. The guarantors appealed. On April 21, 2015, this Court entered an order staying appeal no. 1140578 while Boyd’s and Barnard’s bankruptcy petitions were pending. On April 29, 2015, the bankruptcy court éntered an *325 order granting relief from Boyd’s bankruptcy stay and lifting the stay retroactively pursuant to 11 U.S.C. § • 362(d). This Court then reinstated the appeal.
With regard to Boyd, the bankruptcy court lifted the bankruptcy stay and made the lifting of the stay- effective retroactively. “Pursuant to 11 U.S.C. § 362(d), bankruptcy courts have the discretion to ‘lift the automatic stay retroactively and thereby validate actions which otherwise would be void.’ ” Dudley v. Dudley, 85 So.3d 1043, 1047 (Ala.Civ.App.2011)(quoting Soares v. Brackton Credit Union (In re Soares), 107 F.3d 969, 976 (1st Cir.1997)). Accordingly, the trial court’s dismissal of the claims against Boyd did not violate the bankruptcy stay.
With regard to Barnard, Barnard did not file for bankruptcy until February 27, 2015, two days after the trial court entered its order on February 25, 2015, denying the postjudgment motions. The automatic stay is effective immediately upon filing for bankruptcy. 11 U.S.C. § 362(a). “The federal bankruptcy stay does not reach into the past to undo a valid state judgment.” Miller v. National Franchise Servs. Inc., 167 Ariz. 403, 405, 807 P.2d 1139, 1141 (Ariz.Ct.App.1991). The trial court’s order was final before Barnard filed for bankruptcy protection.

Conclusion

The trial court’s judgment was not final because the trial court did not have jurisdiction to dismiss SEPH’s claims against Long and the trial court did not certify its order as final pursuant to Rule 54(b). Long’s bankruptcy - petition was pending when the trial court entered its judgment. An order entered in violation of the automatic bankruptcy stay is void as to the debtor, thus leaving the claims against Long pending and rendering the judgment nonfinal. A nonfinal judgment will not support an appeal. Dzwonkowski v. Sonitrol of Mobile, Inc., 892 So.2d 354 (Ala. 2004). Accordingly, the appeals are dismissed.
1140578—APPEAL DISMISSED.
1140722—APPEAL DISMISSED.
STUART, PARKER, MAIN, WISE, and BRYAN, JJ., concur.
MURDOCK, J., dissents.

. Gaddy, Richard Harrell, David Harrell, and Stewart Harrell were members of LowMar, LLC, which was a member of Parks, LLC. George was a member of Fort Morgan Investors II, LLC. Rector, was a member of Gulf Shores Marina, LLC, Miller, Lawhorn, and Mullins had a 10%, 10%, and 5% ownership interest in Water's Edge, respectively. Thomas was a member -of Gulf Shores Marina, LLC, Gaddy, George, and Rector filed a joint brief (hereinafter "the Gaddy brief’), The Harrells filed a brief adopting the arguments in the Gaddy brief. Lawhorn did not file a brief. Thomas filed a brief adopting the Gad-dy brief. Miller and Mullins filed a joint brief adopting the Gaddy brief. The other members of Water’s Edge or individuals with membership interests who agreed to guarantee the debt of Water’s Edge are not parties to this appeal.

. Garrigan appears to be an aberration as the -later cases.of Bradberty and Snow apply Rule 54(b).