MADDOX, Justice.
Defendant L. Lamar Snow appeals from a judgment based on a jury verdict in favor of plaintiffs L.C. Baldwin and Kathleen P. Baldwin in the amount of $72,110.88, alleging that the trial court committed numerous errors during the trial of this case. We agree that the trial court erred and reverse.
In January 1975, L.C. Baldwin purchased Bidgood Stationery Corporation (“Bid-good”), expecting to sell the business when he had improved it financially. On December 24, 1979, Baldwin sold the business to Snow, Clyde Reasonover, George Reynolds Brabner, and Richard Ford. Snow, Rea-sonover, and Brabner each purchased 30% of the stock and Ford bought the remaining 10%.
At the time of the closing, the purchasers executed a promissory note to Baldwin and his wife for the purchase of Bidgood. In the purchase agreement, the Baldwins represented that an accounting statement of the worth of the business done on August 81, 1979, was correct in all aspects. The purchasers, in turn, agreed to maintain the business on a sound financial basis and to allow the Baldwins the right to disapprove any major restructuring, in order to avoid jeopardizing their security.
On October 2,1981, an amendment to the purchase agreement was signed which released Brabner and Ford from any liability to the Baldwins based on the promissory note. In return, Brabner and Ford agreed *902 to sell their shares in Bidgood to Snow and Reasonover, with Snow and Reasonover also assuming Brabner and Ford’s liability. The contract among the four purchasers provided that Snow’s liability on the note increased to 49%.[1]
The business began to suffer financially, and on December 14, 1982, Bidgood filed a petition under Chapter 11 of the Bankruptcy Act. This was converted to a Chapter 7 petition on May 18, 1983.
On February 22,1983, the Baldwins instituted this suit against Snow and Reason-over, seeking damages for default on the promissory note. On May 19, 1983, Snow answered, alleging fraud in the inducement as an affirmative defense, and counterclaimed against the Baldwins, seeking damages for the alleged fraud.
On September 12, 1984, the Baldwins amended their original complaint, which had sought damages against Snow based on his 49% liability under the promissory note, together with interest and attorney’s fees; the amendment was to assert a cause of action against Snow for the entire amount owed under the promissory note, based on breach of contract.
On January 28, 1985, the action against Reasonover was stayed pursuant to his filing of a petition under Chapter 7 of the Bankruptcy Act. Prior to trial on January 29, 1985, the Baldwins informed the trial court that they wished to sever Clyde Reasonover from the Action and proceed solely against Snow. Although the trial court never entered a formal order or severance against Reasonover,[2] the case was tried before a jury against Snow alone, based on his alleged 49% liability under the promissory note and the breach of contract claim; the court also tried Snow’s counterclaim of fraud in the inducement.
Snow contends that the trial court erred by charging the jury that Snow’s counterclaim against Baldwin for fraud was governed by the one-year statute of limitations.[3] Snow contends that his counterclaim was compulsory under Rule 13, Ala.R.Civ.P., and, thus, related back to the time the Baldwins filed their complaint, without regard to the statute of limitations; however, Snow failed to specify the grounds of his objection to the trial court’s charge prior to the time the jury retired to consider its verdict, as required by Rule 51, Ala.R.Civ.P. Rule 51 states, in part:
“No party may assign as error the giving or failing to give a written instruction, or the giving of an erroneous, misleading, incomplete, or otherwise improper oral charge unless he objects thereto before the jury retires to consider its verdict, stating the matter to which he objects and the grounds of his objection. Submission of additional explanatory instructions shall not be required unless requested by the court.”
In discussing this portion of Rule 51, this Court, in Odom v. Linsey, 365 So.2d 664 (Ala.1978), stated:
“The true spirit of this portion of the Rule can be gleaned only by reading the two sentences together and with particular emphasis on the word ‘additional’ in the second sentence. When so read, its meaning is clear: The trial judge’s giving or refusal to give any charge, oral or written, will not be reversed on appeal absent an objection with grounds as *903 signed therefor. But where the ground of objection is ‘the giving of an erroneous, misleading, incomplete, or otherwise improper oral charge,’ and the specifics of such grounds are made known to the court, submission of additional explanatory charges (unless requested by the court) are not necessary. Its obvious purpose is to eliminate the excesses of the pre-ARCP practice: Under prior practice, on the one hand, the trial judge could be put in error for relatively trivial mistakes without ample opportunity to review and revise his ruling; and, on the other hand, the appellate courts, in an offsetting effort, declined to review an alleged misleading or incomplete charge unless counsel tendered an explanatory or complementary charge — at best, an impractical and, at worst, an impossible requirement.
K * * *
“The operative spirit of this portion of Rule 51 may be summarized as follows: While the aggrieved party is required to inform the trial judge of the basis for his objection to any portion of the court’s instruction to the jury, upon the appellant’s failure to so assign grounds (if the grounds are not implicit in the objection), the appellate court may inquire whether such deficiency was supplied by requested explanatory charges. If Appellant does neither, he reserves nothing for review.”
On the other hand, as Snow notes in his brief, Gardner v. Dorsey, 331 So.2d 634 (Ala.1976), and Hosey v. Seibels Bruce Group, South Carolina Insurance Co., 363 So.2d 751 (Ala.1978), hold that when a party indicates in his objection to the trial court’s charge the specific language of the charge he finds objectionable, and the charge misstates a point of substantive law, the issue is properly preserved for appellate review.
Clearly, we feel, Snow pointed out the language of the charge which he found objectionable, by stating:
“I except to that portion of the oral charge that pertained to the statute of limitations where the Court said that they must have filed within one year from the discovery or from [the time when by] the exercise of reasonable diligence they should have discovered the fraud.”
Thus, even though Snow failed to specify the grounds of his objection, we can reach the merits of his claim if the trial court misstated the substantive law on the statute of limitations question. We believe that it did.
The trial court charged the jury on the one-year statute of limitations as follows:
“He has got to show that that was found out or should have been found out with him within one year of the time of filing that suit or he can’t maintain the action for fraud and misrepresentation.
“On the other hand, he could [assert] it as a defense to the plaintiffs’ claim now, but if he wants to claim damages as he is doing in the counterclaim, he has got to have discovered it and filed suit within one year.”
In Campbell v. Regal Typewriter Co., 341 So.2d 120 (Ala.1976), this Court discussed when the one-year statute of limitations applies to counterclaims for fraud in the inducement, as follows:
“A counterclaim in the nature of a set-off is subject to applicable statutes of limitation in accordance with Title 7, § 355, [Ala.Code of 1940] supra, as per ARCP 13(c), supra. Counterclaims in the nature of recoupment are not defeated by the general statutes of limitation. See Anno. 1 A.L.R.2d 630, 666.
“Harton v. Belcher, 195 Ala. 186, 70 So. 141 (1915), was an action upon a promissory note to which the defendant pleaded two pleas of recoupment alleging that the defendant was defrauded and deceived by the plaintiff in the sale of timber and lands for which the note was given. Responding to the contention that the pleas were defective in failing to show that they were not barred by the statute of limitation, this court said:
*904 “... Defendant’s claim sprung out of the contract between the parties and affected the considerations moving between them; it ran with the contract, so to speak, and, so far at least as it went to the consideration, as it did in the case here, defendant might rely on it without regard to the statute of limitation. So long as the contract, upon a breach of which the claim is predicated, subsists, and may be enforced, the claim itself may be pleaded in reduction, at least, of the demand on the contract; and this notwithstanding the matter of recoupment, independently considered, may be barred, not only when it is pleaded, but also when the right of action, against which it is asserted, accrued. [Citation Omitted].’ (195 Ala. at 190, 70 So. at 142.)
“This states the rule generally followed in this country. The following appears at 1 A.L.R.2d 666, 667:
“ ‘Almost without exception the cases which deal with recoupments, so recognized and named, run to the effect that if a defendant’s claim is in fact a recoupment the general statutes of limitation do not defeat it; on the contrary it may be availed of defensively so long as plaintiff’s cause of action exists.’
“See also: Wilson v. Montgomery Bank & Trust Co., 203 Ala. 340, 83 So. 64 (1919).
“The ARCP has not altered this general rule. The adoption of ARCP 13 has made matters of recoupment the subject of compulsory counterclaims and has not affected matters of set-off which are the subject of the limitation expressed in ARCP 13, which embodies the provisions of Title 7, § 355, Code.
“Clearly, the matter asserted by Campbell in this case grew out of and was a part of the transaction sued on by Regal. It constitutes a compulsory counterclaim under Rule 13, ARCP. Therefore, his claim cannot be defeated by the general statute of limitations for fraud actions.”
The former common law right of recoupment is now recognized as a compulsory counterclaim in Alabama under Rule 13, Ala.R.Civ.P. See, Committee Comments, Rule 13, Ala.R.Civ.P.
Under Code 1975, § 6-8-84, in order for a counterclaim to withstand a challenge that it is barred by the statute of limitations, the counterclaim must have been “a legal subsisting claim at the time the right of action accrued to the plaintiff on the claim in the action.”
Because Snow’s claim arose from the same transaction or occurrence which is the subject matter of the Baldwins’ claim, Snow’s counterclaim is not barred by the one-year statute of limitations, and the trial court’s judgment must be reversed. See, Hagler v. Ford Motor Credit Co., 367 So.2d 468 (Ala.Civ.App.1978), cert. denied, 367 So.2d 470 (Ala.1979).
It is not necessary for us to consider any of Snow’s other contentions of error, because they are unlikely to occur on retrial. Great Atlantic & Pacific Tea Co. v. Crabtree, 230 Ala. 443, 161 So. 508 (1935); Irwin v. Cotney, 214 Ala. 415, 108 So. 235 (1926).
REVERSED AND REMANDED.
TORBERT, C.J., and ALMON, SHORES, and BEATTY, JJ., concur.

. It is not clear from the record how the 49% liability was arrived at.

. The automatic stay provision of the Bankruptcy Code, 11 U.S.C. § 362, does not affect a party’s right to proceed against solvent codefendants. Fortier v. Dona Anna Plaza Partners, 747 F.2d 1324 (10th Cir.1984).
We consider the disposition of defendant Snow to have been a disposition of all defendants for purposés of finality of appeal. See Rule 54(b), Ala.R.Civ.P.

.The one-year statute governing fraud actions was § 6-2-39, Code 1975. That section was repealed effective January 9, 1985, and the actions governed by it were transferred to § 6-2-38, the two-year statute. See Act 85-39, Ala. Acts, Second Special Session 1984-85. The "saving clause” for fraud actions in § 6-2-3 was also extended to two years by Act 85-39. The statutory changes have no effect on this case.