Rel: November 26, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2025-2026

————————————————

### SC-2025-0040

————————————————

**Marty Roberson and Brenda Roberson**

**v.**

**Teresa Daniel**

**Appeal from Cullman Circuit Court**
**(CV-22-900120)**

BRYAN, Justice.

Marty Roberson ("Marty") and Brenda Roberson ("Brenda") appeal from an order of the Cullman Circuit Court entered on a jury verdict awarding Teresa Daniel approximately $10 million in damages.

Although other claims, counterclaims, and third-party claims are still pending in this action, the circuit court certified its order as a final judgment pursuant to Rule 54(b), Ala. R. Civ. P. Because we decline to consider this multifaceted case in piecemeal fashion, we dismiss the present appeal.

Background

In May 2022, Daniel commenced this action against the Robersons and Roberson Investments, III, LLC ("RI Three"). Daniel alleged that, in November 2021, Brenda approached her about the possibility of buying Vintage West, LLC ("Vintage West") -- Daniel's furniture, decorating, and design company. On December 31, 2021, Daniel and RI Three entered into an agreement, whereby Daniel agreed to sell Vintage West to RI Three for $2.7 million; the purchase price was to be paid in installments. Later, Daniel also entered into a 12-month consulting agreement to assist with the transition of ownership of Vintage West.

According to Daniel, the defendants decided to terminate her consulting agreement in February 2022. Daniel alleged that, after the termination, the defendants had ceased paying her compensation under the consulting agreement. Moreover, Daniel alleged that the defendants

2

had refused to tender the final $1.1 million installment payment that had become due in March 2022. Daniel's complaint asserted a breach-of-contract claim and an unjust-enrichment claim.

In response to Daniel's complaint, the Robersons and RI Three filed an answer and a "counterclaim and third-party complaint." As third-party defendants, the pleading named Gary Daniel ("Gary"); Cindy Taylor; Janah Williams; Rose Petal Trust; 278 Wholesale, LLC; One Source Exteriors, LLC; TD Design Consulting, LLC; JB Dye; JBD Properties, LLC; and fictitiously named parties. Vintage West was later added as a third-party plaintiff.

JB Dye; JBD Properties, LLC; and One Source Exteriors, LLC, were later voluntarily dismissed from the action, without prejudice. Eventually, all the counterclaims and third-party claims were dismissed, without prejudice and by agreement, with the exception of the following claims: "declaratory judgment and reformation"; "conversion"; "slander"; and "breach of contract." A claim of "tortious interference" was dismissed as to the third-party defendants but not as to Daniel.

On March 28, 2023, Daniel filed an amended complaint that, in relevant part, added a fraudulent-inducement claim and a promissory-

3

fraud claim against the Robersons and RI Three. In April 2023, Daniel moved for a trial setting, and the circuit court entered an order directing the circuit-court clerk to set the matter for a jury trial.

After obtaining leave of the circuit court, Daniel filed a second amended complaint, adding a "voidable[-]and[-]fraudulent[-]transfers" claim against RI Three and an additional corporate defendant -- Roberson Investments, II, LLC ("RI Two"). Before trial, Gary and Taylor were also voluntarily dismissed from the action.

On October 2, 2024, Daniel filed a motion to "bifurcate" her "voidable[-]and[-]fraudulent[-]transfers" claim pursuant to Rule 42(b), Ala. R. Civ. P., "for a trial to be set at a later date." According to Daniel's motion, the circuit court had entered a default judgment in a separate action against RI Two and RI Three requiring the avoidance of certain transfers and, therefore, the relief that Daniels sought in the present action had "effectively been granted." To "streamline" the jury trial that was scheduled to occur the following week in the present action, Daniel requested a "bifurcation" of her "voidable[-]and[-]fraudulent[-]transfers" claim. She also asserted that, "as long as the … default judgment [in the separate action wa]s not reversed, amended, or otherwise vacated, …

4

Daniel w[ould] likely not have to try her fraudulent[-]and[-]voidable[-]transfers claims." She stated that, if the default judgment in the separate action "stands and is effectuated," Daniel could dismiss her "voidable[-]and[-]fraudulent[-]transfers" claim in the present action.

On October 5, 2024 -- two days before trial -- counsel for RI Three and Vintage West filed separate suggestions of bankruptcy indicating that each corporation had requested Chapter 7 bankruptcy protection in the United States District Court for the Northern District of Alabama. Two days later, on October 7, 2024, the circuit court entered separate orders stating that all claims "against" RI Three and Vintage West were "continued" until final dispositions were reached in the bankruptcy proceedings.

The jury trial began on October 7, 2024. Before trial, the circuit court considered Daniel's motion to "bifurcate" her "voidable[-]and[-]fraudulent[-]transfers" claim. Daniel's attorney stated that that claim had become "moot" as a consequence of the circuit court's default judgment against RI Two and RI Three in the separate action; he continued: "[T]he reason we would like to bifurcate is just to give them time for appeal or a bankruptcy process to run. And as long as the order

5

stays in place, then people need to go forth with their claims." The circuit court asked counsel for the Robersons, RI Two, RI Three, and Vintage West if he objected to Daniel's bifurcation motion, and he replied that he did not object. The circuit court orally granted the bifurcation motion.

The circuit court then stated: "And so[,] that will leave us today with [Daniel]'s claims for [promissory] fraud and fraudulent inducement." The circuit court asked counsel for the Robersons, RI Two, RI Three, and Vintage West whether they had "claims that [he] fe[lt] should go forward at th[at] time," and counsel responded: "I believe that mine have been stayed with the recent bankruptcy filing, all the counterclaims."

When the circuit court asked whether there was "anything else in regard to the claims that we're dealing with," counsel for the Robersons, RI Two, RI Three, and Vintage West replied: "Not to me." Daniel's attorney replied: "I don't believe so." The circuit court thereafter proceeded to consider motions in limine, and Daniel's promissory-fraud claim and fraudulent-inducement claim were tried against the Robersons in their individual capacities and were ultimately submitted to the jury.

On October 9, 2024, the jury returned a verdict in favor of Daniel and against the Robersons regarding both Daniel's promissory-fraud claim and her fraudulent-inducement claim. The jury awarded Daniel $1,424,582.05 in compensatory damages and $8,575,418 in punitive damages. On October 15, 2024, the circuit court entered an order entitled: "Final Judgment on Jury Verdict." Consistent with the jury's verdicts, the circuit court's order entered a judgment in favor of Daniel regarding her promissory-fraud claim and her fraudulent-inducement claim against the Robersons in their individual capacities only and awarded Daniel $1,424,582.05 in compensatory damages and $8,575,418 in punitive damages.

On November 8, 2014, the Robersons filed a motion to vacate the circuit court's October 15, 2024, order. Daniel filed a response to the motion to vacate, and the Robersons filed a reply to the response. On December 12, 2024, the circuit court entered a five-page order denying the Robersons's motion to vacate. At the conclusion of the order, the circuit court stated:

> "Finally, at the hearing on this motion, the Robersons indicated that they do not believe the Final Judgment is final. The Court disagrees. The Court expressly stated that its judgment was final, but to remove any doubt, the Court finds

7

no just reason for delay and incorporates the Final Judgment on Jury Verdict herein as a final judgment under Rule 54(b)[, Ala. R. Civ. P.]"

The Robersons filed a notice of appeal to this Court on January 21, 2025. See Lewis v. State, 463 So. 2d 154, 155-56 (Ala. 1985)("A judgment certified by a trial court pursuant to Rule 54(b) is a final appealable judgment; the certification triggers the running of the 42-day appeal period.").

## Analysis

On appeal, the Robersons first argue that the circuit court's Rule 54(b) certification was improper. In her brief, Daniel cites this Court's precedent holding that, when a defendant files a bankruptcy petition during the pendency of an action, the action may generally proceed to a judgment against a solvent codefendant. See Bradberry v. Carrier Corp., 86 So. 3d 973, 981 (Ala. 2011)("Beyond the plain language of [11 U.S.C.] § 362, courts have consistently held that the automatic-stay provision of § 362 does not act to stay proceedings against a debtor's solvent codefendants."). We address this issue first before considering the propriety of the circuit court's Rule 54(b) certification.

8

I. Bankruptcy Proceedings and Rule 54(b)

In <u>Bradberry</u>, this Court affirmed a summary judgment in favor of solvent codefendants when the trial court had certified that judgment as final pursuant to Rule 54(b). Although not mentioned by the parties in this case, this Court has also specifically indicated that a judgment against a solvent codefendant may be sufficiently final and appealable for the purposes of Rule 54(b) if another defendant has sought bankruptcy protection during the pendency of an action. See <u>Snow v. Baldwin</u>, 491 So. 2d 900, 902 n.2 (Ala. 1986). In <u>Gaddy v. SE Property Holdings, LLC</u>, 218 So. 3d 315 (Ala. 2016), this Court discussed <u>Snow</u>, <u>Bradberry</u>, and its other precedents[1] regarding these issues and

---

[1]The <u>Gaddy</u> Court also discussed <u>Garrigan v. Hinton Beef & Provision Co.</u>, 425 So. 2d 1091 (Ala. 1983), which it characterized as an "aberration" for failing to apply Rule 54(b). 218 So. 3d at 324 n.2. The <u>Gaddy</u> Court also quoted the following from <u>McKiever v. King & Hatch, Inc.</u>, 366 So. 2d 264, 265 (Ala. 1978):

> " 'The filing of a petition for bankruptcy by a defendant does not terminate an action in state court against him. A pending suit founded upon a claim for which discharge would be a release is automatically stayed until adjudication or dismissal of the bankruptcy petition. 11 U.S.C. § 29(a) (1976); Bankruptcy Rule 401(a), (b). The stay may be annulled as to claims not scheduled in time for proof and allowance. Bankruptcy Rule 401(c). The stay may be vacated by the bankruptcy court upon application by the creditor.

ultimately dismissed an appeal when the trial court had not certified the pertinent order as final pursuant to Rule 54(b).

Notably, if a trial court orders a "true severance" of claims pursuant to Rule 21, Ala. R. Civ. P.,[2] "the entry of a Rule 54(b) certification [is] unnecessary." Stephens v. Fines Recycling, Inc., 84 So. 3d 867, 874 (Ala. 2011). In Bradberry, this Court explained: "When a bankruptcy petition has been filed, it is common practice for a non-bankruptcy court in which

Bankruptcy Rule 401(d). Moreover, the petition may be dismissed and the stay vacated if the petitioner has obtained a discharge in bankruptcy within the past six years. See generally 1A Collier on Bankruptcy ¶¶ 11.01-.08. Johnson Dry Goods Co. v. Drake, 219 Ala. 140, 121 So. 402 (1929). See Piel v. Harvard Interiors Manufacturing Co., 490 F.2d 1272 (8th Cir. 1974).

"'There is no indication of the progress or status of the bankruptcy petition. The stay may have been, or may soon be, dissolved or vacated and the contractor will be able to pursue his claim against the Guests. Since there has been no final disposition of the rights and liabilities of two of the defendants, the order granting summary judgment as to the other five is not a final judgment and, because there has been no entry and determination under Rule 54(b), [Ala. R. Civ. P.,] it is not appealable.'"

Gaddy, 218 So. 3d at 320-21.

[2]In relevant part, Rule 21 provides: "Any claim against a party may be severed and proceeded with separately."

10

an action is pending against the debtor and others to sever the action as to the debtor and to proceed against the solvent codefendants." 86 So. 3d at 984. However, the Court went on to reason as follows concerning the issue of severance in that case:

> "Although the plaintiffs' argument that the trial court must first sever and stay the action against [the debtor in bankruptcy] … in order to avoid violating the automatic stay is in keeping with the spirit of [11 U.S.C.] § 362, this Court is not persuaded that the trial court is required to enter an order formally severing and staying the action as to [the debtor] …. Again, the stay provision in § 362 was automatically triggered as to [the debtor] at the time it filed its bankruptcy petition. It would seem that the trial court could simply proceed to a summary-judgment hearing as to the solvent codefendants while honoring the § 362 automatic stay against [the debtor]. See Snow [v. Baldwin, 491 So. 2d 900 (Ala. 1986),] where the case proceeded to trial against the solvent codefendant after the debtor had declared bankruptcy where the trial court did not enter a formal order severing the debtor from the case."

Id. (emphasis added).

Thus, if a defendant seeks bankruptcy protection during the pendency of an action, a formal Rule 21 severance of a plaintiff's claims against the debtor defendant from the plaintiff's claims against any solvent codefendants may be appropriate under certain circumstances. Id. In such situations, it is unnecessary -- at least insofar as the severed claims against the debtor defendant are concerned -- to certify the

11

resulting judgment concerning the solvent codefendants as final pursuant to Rule 54(b). See Stephens, 84 So. 3d at 874.

A formal severance pursuant to Rule 21 is also not required. Bradberry, 86 So. 3d at 984. However, in the absence of such a severance, a Rule 54(b) certification is necessary to make a judgment concerning the solvent codefendants sufficiently final to support an appeal. Gaddy, 218 So. 3d at 325.

Notably, none of the foregoing decisions evaluated the propriety of a Rule 54(b) certification with reference to the considerations articulated by this Court's precedent for determining when such certifications are appropriate. The complex circumstances of the present case require such an analysis. In this case, there are unadjudicated claims in addition to unadjudicated counterclaims and unadjudicated third-party claims. Moreover, as explained in more detail below, at least one unadjudicated counterclaim does not appear to be impacted by the bankruptcy proceedings. Thus, although we reaffirm the general availability of Rule 54(b) certifications for judgments concerning solvent codefendants when a separate defendant has sought bankruptcy protection during the pendency of an action, we conclude that, under the circumstances

12

presented here, the circuit court exceeded its discretion by certifying its October 15, 2024, order as final pursuant to Rule 54(b).

At this point, we must also note the Robersons' strenuous argument that, based on their relationship to RI Three, the circuit court's October 15, 2024, order against them was a violation of the automatic-stay provision of 11 U.S.C. § 362. We take no position regarding that issue and do not wish for this opinion to be misunderstood as reaching any holding on that point.

The substance of the circuit court's October 15, 2024, order is not before us because we conclude, as a threshold matter, that the order was not properly certified as final pursuant to Rule 54(b). In other words, even assuming -- <u>without deciding</u> -- that the Robersons are solvent codefendants as contemplated by this Court's precedents in this area of the law, the circuit court's Rule 54(b) certification was still improper.

<u>II. Rule 54(b) Certification Considerations</u>

> "Except as otherwise provided by law, an appeal lies only from a final judgment -- that is, a judgment disposing of all claims against all parties. <u>Wright v. Harris</u>, 280 So. 3d 1040, 1043 (Ala. 2019). Rule 54(b) provides one such exception:
>
>> "'When more than one claim for relief is presented in an action, whether as a claim, counterclaim,

13

cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.'

"In short, Rule 54(b) permits a trial court to certify a partial judgment as 'final,' and thus immediately appealable, even though some claims remain pending. Wright, 280 So. 3d at 1043. But that authority is conditioned on the trial court's determination that 'there is no just reason for delay,' and we review that determination for excess of discretion. Id.

"This Court has repeatedly emphasized that '"'"[c]ertifications under Rule 54(b) should be entered only in exceptional cases,"'"' because piecemeal appeals -- which typically entail considerable delay and expense -- are disfavored. Fuller v. Birmingham-Jefferson Cnty. Transit Auth., 147 So. 3d 907, 911 (Ala. 2013)(quoting Dzwonkowski v. Sonitrol of Mobile, Inc., 892 So. 2d 354, 363 (Ala. 2004)); see also Wright, 280 So. 3d at 1043 ('"'[C]ertifications under Rule 54(b) are disfavored.'"' (citations omitted)); Highlands of Lay, LLC v. Murphree, 101 So. 3d 206, 209 (Ala. 2012)('"'It is uneconomical for an appellate court to review facts on an appeal following a Rule 54(b) certification that it is likely to be required to consider again when another appeal is brought after the [trial] court renders its decision on the remaining claims or as to the remaining parties.'"' (citations omitted)).

"In keeping with that general principle, we have consistently held that a trial court exceeds its discretion in certifying a judgment under Rule 54(b) if '"'the issues in the claim being certified and a claim that will remain pending in the trial court "'are so closely intertwined that separate adjudication would pose an unreasonable risk of inconsistent results.'"'"' Id. at 208 (citations omitted)."

14

Bowling v. U.S. Bank Nat'l Ass'n, 380 So. 3d 1030, 1033-34 (Ala. 2023).

On appeal, the Robersons note this Court's precedent stating the following:

> "'… In MCI Constructors, LLC v. City of Greensboro, 610 F.3d 849[,855] (4th Cir. 2010), the United States Court of Appeals for the Fourth Circuit explained:
>
>> "'"In determining whether there is no just reason for delay in the entry of judgment, factors the district court should consider, if applicable, include:
>>
>>> "'"'(1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in a set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing

> claims, expense, and the like.'
>
> > "'"Braswell [Shipyards, Inc. v. Beazer E., Inc.], 2 F.3d [1331,] 1335-36 [(4th Cir. 1993)] ... (quoting Allis-Chalmers Corp. v. Phila. Elec. Co., 521 F.2d 360, 364 (3d Cir. 1975) [overruled on other grounds by Curtiss-Wright Corp. v. Gen. Elec. Co., 446 U.S. 1 (1980)])."'
>
> "Lighting Fair, Inc. v. Rosenberg, 63 So. 3d 1256, [1264] (Ala. 2010)(footnote[] and emphasis omitted)."

Stephens, 84 So. 3d at 875-76.  Regarding counterclaims,

> "'the [United States] Supreme Court has explained "that counterclaims, whether compulsory or permissive, present no special problems for Rule 54(b) determinations; counterclaims are not to be evaluated differently from other claims." Curtiss-Wright Corp. [v. General Elec. Co.], 446 U.S. [1,] 9, 100 S. Ct. 1460 [(1980)].  Like other claims, the Court has explained, "their significance for Rule 54(b) purposes turns on their interrelationship with the claims on which certification is sought."  Id.'"

Lighting Fair, Inc. v. Rosenberg, 63 So. 3d 1256, 1264 (Ala. 2010)(quoting

MCI Constructors, LLC v. City of Greensboro, 610 F.3d 849, 855 n.3 (4th

Cir. 2010)).

As noted above, in this case there are unadjudicated claims, unadjudicated counterclaims, and unadjudicated third-party claims.  We address the requirements of Rule 54(b) with regard to Daniel's

16

unadjudicated claims before turning to the unadjudicated counterclaims and the unadjudicated third-party claims.

III. Daniel's Unadjudicated Claims

The circuit court's October 15, 2024, order adjudicated only two claims at issue in this case: Daniel's promissory-fraud claim and her fraudulent-inducement claim, both of which were tried against only the Robersons in their individual capacities. According to her appellate brief, "[r]elevant to this appeal," Daniel has also asserted a promissory-fraud claim, a fraudulent-inducement claim, and a breach-of-contract claim against RI Three. Daniel's brief at 9. The record indicates that Daniel also asserted an unjust-enrichment claim in the circuit court, apparently against the Robersons and RI Three.

The circuit court "continued" Daniel's claims against RI Three pending the final disposition of RI Three's bankruptcy proceeding. Additionally, Daniel asserted a "voidable[-]and[-]fraudulent[-]transfers" claim against RI Two and RI Three, and the circuit court granted Daniel's motion to "bifurcate" that claim for a separate trial pursuant to Rule 42(b), depending on the final disposition of a judgment in a separate action. The ultimate outcome of that separate action is not apparent to

17

this Court; consequently, its effect on Daniel's "voidable[-]and[-]fraudulent[-]transfers" claim is unclear. We consider each of Daniel's unadjudicated claims in turn.

### A. Unadjudicated Breach-of-Contract Claim Against RI Three

Although Daniel argues that the circuit court properly certified the finality of its judgment against the Robersons in their individual capacities as solvent codefendants pursuant to Rule 54(b), she also repeatedly and unequivocally asserts on appeal that her adjudicated fraud claims against the Robersons in their individual capacities "overlap factually" with her unadjudicated breach-of-contract claim against RI Three. Specifically, she states: "Alabama law (1) allows Daniel to sue the Robersons individually for torts they committed, even if they were acting as agents of [RI Three] and (2) recognizes fraud[-]in[-]the[-]inducement and promissory[-]fraud claims that overlap factually with breach[-]of[-]contract claims." Daniel's brief at 25 (emphasis added); see also Daniel's brief at 38 ("[T]he damages and facts of the fraud[-]in[-]the[-]inducement claim overlapped with the breach[-]of[-]contract claim against [RI Three]." (emphasis added)); id. at 38 ("Daniel's second claim was for promissory fraud, which can also overlap with a breach[-]of[-]contract

18

claim." (emphasis added)); id. at 41 ("Alabama law recognizes tort claims that overlap with breach[-]of[-]contract claims." (emphasis added)); and id. at 42 ("Certainly, if [RI Three] had not declared bankruptcy, Daniel would have proceeded with a breach[-]of[-]contract claim against [RI Three] based on similar facts and damages, and Daniel potentially would have also sought to pierce the corporate veil and impose liability on [RI Three]'s owners. However, the Robersons have failed to cite any law that the existence of this breach[-]of[-]contract claim and piercing[-]the[-]corporate[-]veil theory preclude tort claims based on overlapping conduct." (emphasis added)).

This Court has clearly explained that an obvious factual overlap between adjudicated claims and unadjudicated claims weighs against a Rule 54(b) certification. See Bowling, 380 So. 3d at 1034 ("[In Branch v. SouthTrust Bank of Dothan, N.A., 514 So. 2d 1373 (Ala. 1987), w]e held that the [Rule 54(b)] certification was improper because of the obvious factual overlap between the claim and the counterclaim." (emphasis added)). As noted above,

> "'"[i]t is uneconomical for an appellate court to review facts on an appeal following a Rule 54(b) certification that it is likely to be required to consider again when another appeal is

19

brought after the [trial] court renders its decision <u>on the remaining claims or as to the remaining parties</u>." ' "

<u>Highlands of Lay, LLC v. Murphree</u>, 101 So. 3d 206, 209 (Ala. 2012)(emphasis added; citations omitted). <u>See also</u> <u>Fuller v. Birmingham-Jefferson Cnty. Transit Auth.</u>, 147 So. 2d 907, 913 (Ala. 2013)("The <u>factual underpinnings</u> of the adjudicated claims are the same as those of the unadjudicated counterclaim of the defendants. … Therefore, the trial court's certification of finality under Rule 54(b) is ineffective …." (emphasis added)).

Daniel suggests that her claims against "[RI Three],[3] [RI Three]'s counterclaims, and Vintage West's claims <u>could be</u> resolved in bankruptcy." Daniel's brief at 30 n.6 (emphasis added). She asserts: "Although not in the record before this Court, Daniel is currently pursuing her breach[-]of[-]contract claims as a creditor in bankruptcy court." Daniel's brief at 26 n.3. She also states that delaying a trial on her fraud claims against the Robersons in their individual capacities as a result of the bankruptcy proceedings would have unfairly prejudiced her and that "the claims involving [RI Three] and Vintage West are <u>likely</u>

---

[3]Daniel actually names RI Two, but it appears that she intended to reference RI Three.

to be resolved in bankruptcy court."   Daniel's brief at 31 (emphasis added).   She states: "Even if bankruptcy does not resolve the claims involving [RI Three] and Vintage West, those are separate claims that can be tried and result in a separate judgment.  Delaying the entry of a final judgment would not affect a trial on those claims."  Daniel's brief at 32 (emphasis added).

It is unclear whether Daniel's fraudulent-inducement, promissory-fraud, and breach-of-contract claims against RI Three will be resolved in RI Three's bankruptcy proceeding.  However, Daniel has clearly asserted to this Court that her unadjudicated breach-of-contract claim against RI Three relies, at least in part, on the same facts at issue in her adjudicated fraud claims against the Robersons in their individual capacities.  See Smith v. Slack Alost Dev. Servs. of Alabama, LLC, 32 So. 3d 556, 562 (Ala. 2009)("In the instant case, it is apparent that at least some of the issues presented in the still pending claim against Smith are the same as the issues presented in the appeal now brought by Smith and Smith & Weems Investments.").

Moreover, Daniel seems to suggest the possibility that she will pursue her claims in the present action if they are not resolved in

bankruptcy. If Daniel's breach-of-contract claim against RI Three is not resolved in RI Three's bankruptcy proceeding and an appeal to this Court is ultimately taken from a later order of the circuit court adjudicating that claim, it appears undisputed that this Court would be required to consider at least some of the same facts again in the subsequent appeal. Thus, the interrelated nature of Daniel's adjudicated fraud claims against the Robersons in their individual capacities and her unadjudicated breach-of-contract claim against RI Three weighs against the circuit court's Rule 54(b) certification in this case.

### B. Unadjudicated Fraudulent-Inducement and Promissory-Fraud Claims Against RI Three

Presumably, a similar factual overlap also exists between Daniel's adjudicated fraudulent-inducement and promissory-fraud claims against the Robersons in their individual capacities and her unadjudicated fraudulent-inducement and promissory-fraud claims against RI Three, and it is also unclear whether those claims will be resolved in RI Three's bankruptcy proceeding. Thus, the interrelated nature of these claims likewise weighs against the circuit court's Rule 54(b) certification in this case.

22

### C. Unadjudicated Unjust-Enrichment Claim Against the Robersons and RI Three

As noted above, Daniel's operative complaint in this action also included an unjust-enrichment claim requesting a judgment against the "[d]efendants" collectively that appears to also be based on the same general factual circumstances as her other claims. Daniel may have intended to abandon her unjust-enrichment claim against the Robersons in their individual capacities by not presenting that claim at trial. See Van Hoof v. Van Hoof, 997 So. 2d 278, 284 n.12 (Ala. 2007). However, because no trial has been conducted on Daniel's claims against RI Three, the unjust-enrichment claim against RI Three also appears to still be unadjudicated and appears to be factually related to the fraud claims that have been adjudicated against the Robersons in their individual capacities. It is likewise unclear what effect, if any, RI Three's bankruptcy proceeding will have on the unjust-enrichment claim. Thus, the interrelated nature of these claims likewise weighs against the circuit court's Rule 54(b) certification in this case.

#### D. Unadjudicated "Voidable[-]and[-]Fraudulent[-]Transfers" Claim Against RI Two and RI Three

Although Daniel's "voidable[-]and[-]fraudulent[-]transfers" claim is not mentioned in her appellate brief, the record demonstrates that Daniel has asserted a "voidable[-]and[-]fraudulent[-]transfers" claim against RI Two and RI Three, and the circuit court granted Daniel's motion to "bifurcate" that claim for a separate trial pursuant to Rule 42(b), depending on the ultimate disposition of a judgment in a separate action.

"[Rule 54(b)] applies to actions in which 'separate trials' are ordered pursuant to Rule 42(b),"[4] but "does not apply … to claims 'severed' from the original action." Key v. Robert M. Duke Ins. Agency, 340 So. 2d 781, 783 (Ala. 1976). However, the fact that a trial court has ordered separate trials pursuant to Rule 42(b) does not necessarily mean that a Rule 54(b) certification would be proper with respect to an order adjudicating the

---

[4]Rule 42(b) provides:

"The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury as declared by Article 1, Section 11 of the Alabama Constitution of 1901."

claims tried first. See Stephens, 84 So. 3d at 874 ("[W]e conclude that the trial court … ordered separate trials of those claims pursuant to Rule 42(b)."); and id. at 879 ("The possibility of a future appeal and this Court's general disfavor of Rule 54(b) certifications, coupled with the interrelated nature of the still pending counterclaims and the potential for setoff, … convinces us that the posture of this case is not yet appropriate for Rule 54(b) certification, that accepting the trial court's certification will simply result in appellate review in piecemeal fashion, and that there is, in fact, just reason for delay.").

In this case, it appears that Daniel requested a separate trial pursuant to Rule 42(b) regarding her "voidable[-]and[-]fraudulent[-]transfers" claim against RI Two and RI Three not because it was factually unrelated to her fraud claims against the Robersons in their individual capacities but primarily because that claim could be rendered moot by a judgment in a separate action. As noted above, before trial, Daniel's attorney stated: "[T]he reason we would like to bifurcate is just to give them time for appeal or a bankruptcy process to run. And as long as the order stays in place, then people need to go forth with their claims." (Emphasis added.)

25

The ultimate disposition of the judgment in the separate action is not apparent to this Court, and the effect of RI Three's bankruptcy proceeding on Daniel's "voidable[-]and[-]fraudulent[-]transfers" claim is also unclear. Notably, however, the facts underlying that claim also appear to perhaps be related to Daniel's fraud claims against the Robersons in their individual capacities. In her appellate brief, Daniel states the following regarding the trial of her fraud claims against the Robersons in their individual capacities: "Marty Roberson also testified in his deposition -- the relevant portions of which were played at trial -- that [RI Three] transferred assets out of [RI Three] and into another entity, [RI Two], to protect them from lawsuits." Daniel's brief at 17. To the extent that Daniel's "voidable[-]and[-]fraudulent[-]transfers" claim against RI Two and RI Three in this action is still viable, the pendency of that claim in this action also weighs against the circuit court's Rule 54(b) certification.

E. Conclusion Regarding Daniel's Unadjudicated Claims

Notwithstanding RI Three's bankruptcy proceeding, we conclude that, considered altogether, the interrelated nature of Daniel's adjudicated claims and her unadjudicated claims weighs against the

26

circuit court's decision to certify its October 15, 2024, order as final pursuant to Rule 54(b). However, even if we were inclined to defer to the circuit court's discretion under Rule 54(b) with respect to Daniel's unadjudicated claims, we must also recognize that unadjudicated counterclaims and unadjudicated third-party claims have also been asserted in this action. We address those next.

## IV. The Counterclaims and the Third-Party Claims

It is undisputed that RI Three and Vintage West have asserted counterclaims and third-party claims in the circuit court that have not yet been adjudicated. As explained below, however, the parties disagree regarding whether the Robersons have asserted any counterclaims in their individual capacities. Therefore, we address the claims asserted by RI Three and Vintage West first before turning to the Robersons individually.

### A. Unadjudicated Counterclaims and Third-Party Claims Asserted by RI Three and Vintage West

It appears that the following counterclaims and third-party claims asserted by RI Three and Vintage West have not yet been adjudicated by the circuit court: "declaratory judgment and reformation"; "conversion"; "breach of contract"; "slander"; and "tortious interference." It appears

that the "tortious[-]interference" counterclaim is being asserted against only Daniel, but it appears that the other claims are being asserted collectively against Daniel and the remaining third-party defendants, which appear to be the following: Williams; Rose Petal Trust; 278 Wholesale, LLC; and TD Design Consulting, LLC.

As noted, RI Three and Vintage West have sought bankruptcy protection pursuant to Chapter 7 of the Bankruptcy Code.

> "'A number of cases have held that once a proceeding has been initiated under Chapter 7 of the Bankruptcy Code involving a debtor, the trustee in bankruptcy becomes the real party in interest with respect to lawsuits upon causes of action held by the debtor. See, e.g., Bickford v. Ponce de Leon Care Ctr., 918 F. Supp. 377 (M.D. Fla. 1996); Ex parte Moore, [793 So. 2d 762] (Ala. 2000)(distinguishing Chapter 13 cases, although using "standing" terminology.).'"

Ex parte Sterilite Corp. of Alabama, 837 So. 2d 815, 819 (Ala. 2002)(quoting Baltic v. Alpha Chem. & Paper Co., 770 So. 2d 626, 634 (Ala. Civ. App. 2000). See also Slater v. United States Steel Corp., 871 F.3d 1174, 1180 (11th Cir. 2017)("Because a Chapter 7 debtor forfeits his prepetition assets to the estate, only the Chapter 7 trustee, not the debtor, has standing to pursue a civil legal claim unless the trustee abandons the asset, which then returns the claim to the possession and control of the debtor.").

28

Therefore, with respect to the counterclaims and the third-party claims being asserted by RI Three and Vintage West, the trustee administering each bankruptcy estate is the real party in interest, from all that appears to this Court. However, no bankruptcy trustee is a party to the present appeal, and, it appears, no bankruptcy trustee has expressed a position regarding the counterclaims and third-party claims in the circuit court. Consequently, it is unclear to this Court whether the counterclaims and third-party claims being asserted by RI Three and Vintage West will be litigated in the circuit court and, if so, when an order will be entered disposing of those claims.

However, it seems apparent that, at the very least, RI Three's unadjudicated counterclaims are factually related to Daniel's fraud claims adjudicated against the Robersons in their individual capacities. As explained above, Daniel has asserted to this Court that her unadjudicated breach-of-contract claim against RI Three is factually similar to her fraud claims adjudicated against the Robersons in their individual capacities. Indeed, as noted, she has specifically stated that "the <u>damages and facts</u> of the fraud[-]in[-]the[-]inducement claim

29

overlapped with the breach[-]of[-]contract claim against [RI Three]." Daniel's brief at 38 (emphasis added).

Daniel also concedes that RI Three's unadjudicated counterclaims against her arose out of the same transaction or occurrence as her unadjudicated breach-of-contract claim against RI Three. See Daniel's brief at 52 ("[W]hile [RI Three] did have compulsory counterclaims, the trial court stayed Daniel's claims against [RI Three] and did not try them to the jury -- meaning both Daniel['s] and [RI Three]'s claims that arose out of the same transaction or occurrence were stayed." (emphasis added)).

The United States Supreme Court has explained that, for the purposes of certification under Rule 54(b) of the Federal Rules of Civil Procedure, whether an unadjudicated counterclaim arose out of the same transaction or occurrence as an adjudicated claim is not alone dispositive. See Cold Metal Process Co. v. United Eng'g & Foundry Co., 351 U.S. 445, 452 (1956)("If the District Court certifies a final order on a claim which arises out of the same transaction and occurrence as pending claims, and the Court of Appeals is satisfied that there has been no abuse of discretion, the order is appealable."). See also Cates v. Bush, 293 Ala.

30

535, 540, 307 So. 2d 6, 11 (1975)(discussing the principles articulated in Cold Metal).

In this case, it appears that the parties agree that the counterclaims asserted by RI Three against Daniel were compulsory counterclaims with respect to Daniel's breach-of-contract claim against RI Three. As explained, neither RI Three's counterclaims nor Daniel's breach-of-contract claim have yet been adjudicated. However, based on Daniel's representations to this Court, it is apparent that the issues involved in those unadjudicated claims are closely related to the issues presented during the trial of Daniel's fraud claims against the Robersons individually.

Like Daniel's breach-of-contract claim against RI Three, if RI Three's unadjudicated counterclaims are not resolved as a consequence of RI Three's bankruptcy proceeding and are instead tried in the circuit court and an appeal to this Court is ultimately taken from a later order of the circuit court adjudicating those counterclaims, it appears likely that this Court would be required to consider the same facts again in the subsequent appeal.

B. The Robersons' Unadjudicated Counterclaim

Finally, even setting aside all the issues presented by this case concerning RI Three's and Vintage West's bankruptcy proceedings, the record indicates that the Robersons, in their individual capacities, have also asserted at least one counterclaim against Daniel that the circuit court has not yet adjudicated. The parties also argue about this point on appeal.

Daniel argues that "the Robersons have failed to show that they individually have any counterclaims … and thus a setoff flowing from such a counterclaim." Daniel's brief at 31. The Robersons respond as follows:

> "Alabama law has long held that a plaintiff, or in this case, counterclaim plaintiffs, 'are the master[s] of [their own] complaint.' Cook v. Midland Funding, LLC, 208 So. 3d 1153, 1158 (Ala. Civ. App. 2016). The record of this case is clear that the Counterclaim Plaintiffs, comprised of [RI Three], Marty Roberson, Brenda Roberson[,] and Vintage West, have properly plead[ed] and asserted claims against Teresa Daniel based on the same set of facts and circumstances that Daniel's own claims are based, and Daniel lacks any authority to determine who she purports to be the proper Counterclaim Plaintiff to bring each claim. … The very fact that all claims arise out of the same set of operative facts, regardless of which party brings which claim, renders it error for the trial court to allow Daniel to present her claims to a jury while staying the defendants' counterclaims, all of which arise from the same nucleus of facts. See Ex parte Rudolph, 515 So. 2d [704,] 707

[(Ala. 1987)]; Ex parte Daniels, 264 So. 3d [865,] 870 [(Ala. 2018)]; and Ex parte McQueen, 352 So. 3d [1179,] 1184-85 [(Ala. 2021)]. The risk of separate juries reaching inconsistent verdicts in a case of this nature is exceedingly high, if not a certainty."

The Robersons' reply brief at 24.

Contrary to Daniel's assertions to this Court, the circuit court's December 12, 2024, order denying the Robersons' motion to vacate the circuit court's October 15, 2024, order expressly stated that the Robersons have asserted at least one counterclaim in their individual capacities that has not yet been adjudicated. Specifically, the circuit court's order stated:

"Of the remaining counterclaims, all but one appear to be claims of either [RI Three] or Vintage West -- neither of which were part[ies] to the trial. The only individual claim was for defamation, and the Robersons failed to present any argument on how that claim was compulsory under Rule 13[, Ala. R. Civ. P.]"

(Emphasis added.)

By stating which counterclaims "appear" to have been asserted by the Robersons in their individual capacities, the circuit court's order is somewhat ambiguous regarding the counterclaims that have actually

33

been pleaded and asserted.[5] However, the order unambiguously stated that the Robersons have individually asserted at least a "defamation" counterclaim, which was likely a reference to the "slander" counterclaim set forth in the operative pleading.

In Stephens, 84 So. 3d at 878, this Court explained:

"A potential for a setoff … 'weighs against the certification of the [underlying] [j]udgment as ... final.' The Supreme Court has stated that the 'mere presence of [a nonfrivolous counterclaim] does not render a Rule 54(b) certification inappropriate.' Curtiss-Wright Corp. v. General Electric Co., 446 U.S. 1, 9, 100 S. Ct. 1460, 64 L. Ed. 2d 1 (1980). See also Scrushy v. Tucker, 955 So. 2d 988, 999 (Ala. 2006)(same). Similarly, 'the possibility of a setoff [is not] necessarily dispositive of questions regarding the appropriateness of a Rule 54(b) certification.' H.P.H. Props., Inc. v. Cahaba Lumber & Millwork, Inc., 811 So. 2d 554, 556 (Ala. Civ. App. 2001)(Murdock, J., concurring in the result)(citing Curtiss-Wright, supra, for the proposition that the 'court of appeals erred in dismissing appeal from a Rule 54(b) judgment on one of main claims merely because counterclaim remained pending that might offset judgment entered'). Nonetheless, as reflected in the five-factor analysis set out in [Lighting Fair, Inc. v.] Rosenberg, [63 So. 3d 1256 (Ala. 2010)], although not dispositive in and of itself, the existence of a nonfrivolous counterclaim or other issue that

---

[5]The circuit court's December 12, 2024, order noted that counsel for the Robersons had represented before trial that "all of the counterclaims were stayed and that they were not proceeding with those claims." (Emphasis added.) However, the circuit court did not determine that the Robersons had abandoned any counterclaims by making such a representation. Indeed, as noted above, the circuit court's order indicated that their "defamation" counterclaim was still "remaining" after trial.

could result in a possible setoff, such as we have here, '[is] surely not an insignificant factor' in evaluating the appropriateness of a Rule 54(b) certification. Curtiss-Wright, 446 U.S. at 12. See also Harper Sales Co. [v. Brown, Stagner, Richardson, Inc.], 742 So. 2d [190,] 192 [(Ala. 1999)](determining that trial court's Rule 54(b) certification was inappropriate because the 'later resolution of [the remaining] counterclaim could affect the amount of damages awarded'). The potential for a setoff affecting the breach-of-contract judgment in this case weighs against the Rule 54(b) certification."

On appeal, Daniel argues that there is no possibility of a setoff in this case. Specifically, she asserts the following: "Here, [RI Three] and Vintage West are not parties to the judgment, so they could not have a setoff against a judgment entered against the Robersons." Daniel's brief at 31. However, as noted, Daniel's argument ignores the circuit court's clear indication that the Robersons have asserted at least a slander counterclaim in their individual capacities that has not yet been adjudicated. Thus, it appears that the possibility of a potential setoff against Daniel's approximately $10 million judgment against the Robersons does exist. Although this factor is not in and of itself dispositive, it is not insignificant and, in this case, weighs against the circuit court's Rule 54(b) certification. See Stephens, 84 So. 3d at 878. Of course, in making this observation, we do not suggest how any

counterclaim asserted by the Robersons should be disposed of by the circuit court.

Conclusion

"We reiterate that '[t]his Court looks with some disfavor upon certifications under Rule 54(b),' Schlarb [v. Lee], 955 So. 2d [418,] 419 [(Ala. 2006),] and that Rule 54(b) certifications should be entered only in exceptional cases. Dzwonkowski [v. Sonitrol of Mobile, Inc.], 892 So. 2d [354,] 363 [(Ala. 2004)]." Wright v. Harris, 280 So. 3d 1040, 1047 (Ala. 2019). "'"'"Appellate review in a piecemeal fashion is not favored."'"'" Schlarb v. Lee, 955 So. 2d 418, 419 (Ala. 2006)(citations omitted).

In this case, we express no opinion regarding the merits of Daniel's fraud claims against the Robersons in their individual capacities that have been adjudicated by the circuit court, nor do we express any opinion regarding the merits of any unadjudicated claims, unadjudicated counterclaims, or unadjudicated third-party claims. We likewise express no opinion regarding any substantive issue related to the bankruptcy proceedings involving RI Three and Vintage West, whether it was error for the circuit court to conduct a jury trial on fewer than all claims asserted in this action, whether any counterclaims were compulsory or

36

permissive, or whether the circuit court's first trial should have any effect on any subsequent trial.

As a threshold matter in this appeal, we must be concerned with only whether the circuit court exceeded its discretion in certifying its October 15, 2024, order as final under Rule 54(b). Regarding that inquiry, it remains true that, whatever the respective reason for each, unadjudicated claims, unadjudicated counterclaims, and unadjudicated third-party claims remain pending in the circuit court. From the arguments set forth in the parties' appellate briefs, it appears undisputed that at least some of the unadjudicated claims involve at least some of the same issues presented by the claims that have been adjudicated by the circuit court. Consequently, this Court's piecemeal consideration of this action would likely require us to consider the same facts again over the course of multiple appeals. It also appears that the possibility of a setoff against the approximately $10 million judgment entered against the Robersons in their individual capacities may exist.

We note that, in an effort to offer guidance to the parties and to the circuit court, this Court's opinion has endeavored to comprehensively address all the unadjudicated claims, unadjudicated counterclaims, and

unadjudicated third-party claims that appear to still be pending in the circuit court based on the voluminous materials before us. However, to the extent that any claims, counterclaims, or third-party claims remain pending in the circuit court that we have not squarely addressed in this opinion, we emphasize that the Rule 54(b) certification considerations cited herein should be examined with respect to <u>all</u> claims asserted against <u>all</u> parties to an action before such a certification is made.

Finally, as explained above, we also recognize that a certification of finality pursuant to Rule 54(b) may sometimes be a useful and appropriate tool for a trial court presented with a situation in which a defendant has commenced a bankruptcy proceeding during the pendency of an action but claims against solvent codefendants can still be adjudicated. However, even assuming, <u>without deciding</u>, that this case presented such a scenario to the circuit court, our weighing of the <u>Rosenberg</u> factors in this case leads us to the conclusion that the circuit court exceeded its discretion in certifying its October 15, 2024, order as a final judgment pursuant to Rule 54(b) under the circumstances presented here. Accordingly, we conclude that the circuit court's Rule 54(b)

certification was invalid, and, therefore, this appeal is from a nonfinal judgment.  Consequently, we dismiss the appeal.

APPEAL DISMISSED.

Stewart, C.J., and Shaw, Wise, Sellers, Mendheim, Cook, and McCool, JJ., concur.